**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| BRIAN L. WAGGONER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | |
| FRITO-LAY, INC., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## COMPLAINT

The plaintiff, Brian L. Waggoner, states and alleges the following claims for relief against the defendant, Frito-Lay, Inc.

## JURISDICTION AND VENUE

1. This is an employment case based upon and arising under the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 621, et seq.

2. This court has subject matter jurisdiction over the plaintiff's claims pursuant to 28 U.S.C. § 1331. The plaintiff's claims which are based on the ADEA were included in a timely administrative charge filed with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right-to-sue letter to the plaintiff regarding these claims, and this action was filed within 90 days after receipt of the right-to-sue letter.

3. All of the wrongful acts and practices alleged below were committed within the State of Kansas, and venue is proper in this court pursuant to 28 U.S.C. § 1391(b)-(c).

## PARTIES

4. The plaintiff, Brian L. Waggoner, is over 40 years old, and he resides in Topeka, Kansas. Mr. Waggoner was employed by the defendant, Frito-Lay, Inc., for almost 16 years.

5. The defendant, Frito-Lay, Inc., is a corporation with its principal place of business in Plano, Texas. Frito-Lay owns and operates a food manufacturing plant in Topeka, Kansas.

## FACTUAL ALLEGATIONS

6. In March of 2004, Mr. Waggoner was hired by Frito-Lay to work in its plant in Topeka. After approximately two years, Mr. Waggoner was promoted to a management-level position.

7. For the next thirteen years, Mr. Waggoner served in a variety of positions as a manager at Frito-Lay's plant in Topeka. During all of his years as a manager, Mr. Waggoner's performance was always rated as consistently meeting or exceeding performance expectations. Mr. Waggoner never received any verbal or written coaching of any kind while he was employed as a manager.

8. Mr. Waggoner was eventually promoted to a level 9 manager position. Thereafter, Mr. Waggoner applied for a number of level 10 manager positions, but he was not promoted to any of these level 10 positions. Instead, these level 10 positions were all given to younger, less experienced employees, who held level 8 manager positions. Several of these younger employees had directly reported to Mr. Waggoner prior to their promotion to the level 10 positions.

9. In July of 2019, Mr. Waggoner applied for a Process Manager position, which is a level 10 position. Mr. Waggoner was selected as one of the finalists for this position, and he was interviewed by the Plant Director, Mark Brinker. This interview was unstructured, and Mr. Brinker did not take any notes during the interview.

10. Mr. Waggoner was not selected to fill the Process Manager position. Instead, the position was given to a 27-year-old employee, who held a level 8 position, and who was supervised by Mr. Waggoner. This employee had only been employed by Frito-Lay for four years, and was less qualified than Mr. Waggoner.

11. On or about July 11, 2019, Mr. Brinker informed Mr. Waggoner that he had not been selected to fill the Process Manager position. When Mr. Waggoner asked for an explanation, Mr. Brinker replied that "the company is going in a different direction", and that there was "a youth movement."

12. Mr. Brinker's comment about "a youth movement" at Frito-Lay's Topeka plant was an accurate description. Between September of 2016 and July of 2019, eight employees were promoted to level 10 manager positions at the plant. Seven of these employees were under the age of 30, and the other employee was under the age of 35.

13. On January 11, 2020, Mr. Waggoner gave notice to Frito-Lay that he was resigning from his employment at the Topeka plant. Mr. Waggoner believed that he had no other reasonable choice but to resign because of "a youth movement" at the Topeka plant, which meant that he would never be promoted to a level 10 manager position.

**COUNT I:  FAILUIRE TO PROMOTE IN VIOLATION OF THE ADEA**

14. Paragraphs 1-13 above are incorporated by reference as though fully set forth in Count I.

3

15. Mr. Waggoner's age was the factor that made a difference in the decision not to promote him to the Process Manager position in July of 2019.

16. As a result of the decision not to promote Mr. Waggoner to the Process Manager position, Mr. Waggoner has sustained damages in the form of back pay, front pay, and loss of benefits.

17. The failure to promote Mr. Waggoner to the Process Manager position constituted a willful violation of the ADEA, and therefore Frito-Lay is liable for liquidated damages.

WHEREFORE, Mr. Waggoner prays for judgment against Frito-Lay, Inc., in excess of $100,000.00, consisting of back pay, front pay, loss of benefits, liquidated damages, attorney fees, litigation expenses, prejudgment interest, and such other relief as the court deems just and proper.

## COUNT II:  CONSTRUCTIVE DISCHARGE IN VIOLATION OF THE ADEA

18. Paragraphs 1-17 above are incorporated by reference as though fully set forth in Count II.

19. Mr. Waggoner was constructively discharged from his employment at the Topeka plant because he reasonably believed that he had no other choice but to resign. Specifically, Mr. Waggoner was told by Mr. Brinker that there was "a youth movement" at the Topeka plant, and Mr. Waggoner understood this to mean that he would never be promoted to a level 10 management position.

20. Mr. Waggoner's age was the factor that made a difference in his constructive discharge.

21. As a result of his constructive discharge, Mr. Waggoner has sustained damages in the form of back pay, front pay, and loss of benefits.

22. The constructive discharge of Mr. Waggoner constituted a willful violation of the ADEA, and therefore Frito-Lay is liable for liquidated damages.

WHEREFORE, Mr. Waggoner prays for judgment against Frito-Lay, Inc. in excess of $100,000.00, consisting of back pay, front pay or reinstatement, loss of benefits, liquidated damages, attorney fees, litigation expenses, prejudgment interest, and such other relief as the court deems just and proper.

> Respectfully Submitted,
>
> SLOAN, EISENBARTH, GLASSMAN
> McENTIRE & JARBOE, L.L.C.
>
> BY:   s/Alan V. Johnson
>       Alan V. Johnson, KS #9992
>       ajohnson@sloanlawfirm.com
>       534 South Kansas Avenue, Suite 1000
>       Topeka, Kansas 66603-3456
>       785-357-6311
>       785-357-0152 facsimile
>       Attorneys for Plaintiff

## **REQUEST FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. Pro. 38, the plaintiff requests a trial by jury on all claims triable to a jury.

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff requests that Topeka, Kansas, be designated as the place of trial in this case.

Respectfully Submitted,


SLOAN, EISENBARTH, GLASSMAN
McENTIRE & JARBOE, L.L.C.

BY:   s/Alan V. Johnson
          Alan V. Johnson, KS #9992
          ajohnson@sloanlawfirm.com
          534 South Kansas Avenue, Suite 1000
          Topeka, Kansas 66603-3456
          785-357-6311
          785-357-0152 facsimile
          Attorneys for Plaintiff