IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRIAN WAGGONER,

        Plaintiff,

v.                                                                                                Case No. 20-4086-JWB

FRITO-LAY, INC.,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion for summary judgment. (Doc. 23.) The motion is fully briefed and is ripe for decision. (Docs. 24, 27, 30.) For the reasons stated herein, Defendant's motion for summary judgment is GRANTED.

**I. Facts**

The court finds the following facts to be uncontroverted for purposes of summary judgment. Factual disputes about immaterial matters are excluded from the following statement, as are factual averments asserted by the parties that are not supported by the record citations provided.[1]

Plaintiff began his employment with Defendant at its Topeka, Kansas, facility in March of 2004 as a part-time sanitation employee. Plaintiff graduated from Washburn University in June 2005, after which he was promoted to a Weekend Resource position. In 2008, Plaintiff was

---

[1] The court has excluded Plaintiff's allegations taken from the declaration of Greg Henault. Plaintiff does not dispute Defendant's assertion that Plaintiff failed to disclose Henault in initial disclosures or in supplemental disclosures as required by Fed. R. Civ. P. 26(a) and (e). Rather, Plaintiff contends the violation was harmless because the declaration is "only being used to rebut the testimony of Mark Brinker" that he never received a complaint of age discrimination from anyone other than Plaintiff. (Doc. 31 at 5.) But that asserted fact is not material for purposes of summary judgment, and accordingly does not merit consideration of Henault's declaration. *See* Fed. R. Civ. P. 37(c)(1) (a party who fails to identify witness as required by Rule 26(a) or (e) "is not allowed to use that information or witness … on a motion, … unless the failure was substantially justified or is harmless.")

promoted to a Shift Manager position in which he oversaw third-shift resources and team members. In February 2010, Defendant promoted Plaintiff to another managerial position, and in March 2011, it promoted him to a Sanitation Manager position.

Brevan Graham was born in 1991. He graduated from college in 2014 and worked for Quaker Oats for two years before being hired by Defendant. During Graham's first full year of employment with Defendant in 2017, Plaintiff was Graham's supervisor. (Doc. 27-1 at 3.)

Plaintiff served as Sanitation Manager from 2011 to 2016, when he moved to the Extruded Manager role. Later in 2016, Defendant promoted Plaintiff to Process Support Manager. Plaintiff remained in that position until his resignation on January 11, 2020.

Plaintiff knew Defendant maintained an Equal Employment Opportunity policy that confirmed its commitment to equal opportunity for all, including a commitment to promote persons without regard to characteristics including age. The policy noted that an employee who believed they were the victim of discrimination could contact their supervisor or Human Resources about their allegations. Plaintiff knew Defendant maintained a zero-tolerance policy for any employee who retaliated against another employee for filing a workplace grievance or complaint of discrimination.

Mark Brinker worked for Defendant for 33 years until his voluntary retirement in April 2021. Between 2015 and 2021, Brinker was the Site Director at Defendant's Topeka facility, which was the highest-ranking position at the site. Prior to that – from 2010 to 2015 – Brinker had been Regional Vice President. Brinker was over the age of 40 when Defendant promoted him to the Regional Vice President position. Brinker voluntarily changed positions to become Site Director in 2015 after the organization restructured and reduced the number of its regions. As Site Director, about ten employees reported directly to Brinker. These direct reports included

managers, department leaders, and directors. They held positions known as L8, L9, L10, and LGI. An LGI position is higher than an L10. Between 2016 and 2021, Brinker personally terminated the employment of some managers under the age of 40.

Managers and directors at the Topeka facility received yearly performance reviews known as Performance Development Reviews, or PDRs. Brinker completed PDRs for his direct reports in which he assessed their performance and assigned a numerical score for various categories. He also routinely provided comments on PDRs for employees who did not directly report to him. Based on ratings in the PDRs, Brinker would assign numerical scores for employees. Employees were rated in PDRs on a numerical scale between 1 and 5 in various categories and competencies for both short-term and long-term results. A rating of 3 indicated an employee met some expectations and failed to meet some; a rating of 4 indicated an employee met all expectations; and a rating of 5 indicated an employee met all expectations and exceeded significantly. An employee's total of the short-term and long-term scores resulted in a cumulative PDR score for the year.

At times Defendant required the manager preparing a performance evaluation to sign the PDR along with a secondary signatory. During these periods, Brinker looked at every employee's performance evaluation to understand the basis of the evaluation and score provided and to ensure the evaluation and score were in alignment.

When Brinker considered individuals for a position that reported directly to him, Brinker would interview the candidates and was the sole decision-making authority on who would receive the position.

Plaintiff received an overall score of 3 out of 5 on his 2017 PDR for both short-term and long-term results, for a combined score of 6. Prior to signing Plaintiff's 2017 PDR, Brinker had

worked with Plaintiff either directly or indirectly and was able to observe his performance. Plaintiff received the same score on his 2018 PDR, which included a comment that Plaintiff needed to develop further in his technical expertise. Plaintiff's cumulative score of 6 was lower than the average rating given to the general population of employees receiving PDRs. The average rating was 6.4 to 6.5. According to Plaintiff, Graham told him that he also received a cumulative PDR rating of 6 for the year 2018.

Brinker testified he believed that during Plaintiff's last year or so, Plaintiff "struggled" with being at the facility when he was needed or expected and with driving projects to completion. (Doc. 24-2 at 13.) Brinker testified he believed Plaintiff had an inconsistent job performance, including absenteeism and being hard to locate, which according to Brinker was "very frustrating for his direct reports and front-line team members…." (*Id.*) Brinker testified that Graham, who became Plaintiff's direct supervisor, relayed to Brinker that he was having difficulty finding Plaintiff at work. Brinker advised Graham to talk to Plaintiff to find out what was going on and to set expectations. Brinker testified Graham was frustrated with Plaintiff's performance, and that Graham reported back "that he was continuing to struggle with [Plaintiff]," indicating Plaintiff had not responded to the feedback with a positive or significant change. (*Id.* at 16.)

In August 2016, Plaintiff had applied for an L10 position with Defendant but did not receive the promotion. Plaintiff was under the age of 40 at the time. Catherine Swift, who was approximately 28 years old at the time, received the promotion. Plaintiff applied for and was denied two additional L10 positions during his employment with Defendant when he was 37 and 38 years old. (Doc. 24 at 10.) The latter two positions went to Chris Emesih and Natalie Richardson, who were both approximately 26 years old at the time.

4

The Processing Manager is critical to Defendant's Topeka facility. The Processing Manager is required to set and achieve production performance standards. Defendant expected the Processing Manager to have a demonstrable history of driving results, taking initiative, and building and managing teams effectively. Defendant also expected the person to work flexible hours and be able to work 55-60 hours per week based on business needs. Defendant opened the L10 Processing Manager position to applicants in June of 2019. Plaintiff applied for the position in June when he was 40 years and one month old. Graham also applied for the position. Graham was 28 years old. They were the only two applicants. Brinker conducted interviews for the position and determined who would receive the position. At the time of the interviews, Graham reported directly to Brinker. (*Id.* at 12.)

Brinker testified he believed Plaintiff's responses in the interview were vague and that Graham's responses were organized and thoughtful. He said Graham provided details about what he wanted to accomplish in the position and the strategies he wanted to develop. Brinker testified he did not select Plaintiff for the position based on Plaintiff's past performance and his interview. Brinker said he selected Graham because he considered him the better candidate based on his history of success and his performance during the interview. (*Id.* at 13.) Brinker said he made the determination based in part on his observations, directly or indirectly, of the candidates' employment performance at the Topeka facility. Brinker did not consult with anyone else and made the decision on his own.

Brinker met with Plaintiff to inform him of his decision, with Brinker allegedly telling Plaintiff the company is "going in a different direction." (Doc. 27-1 at 5.) Plaintiff claims that during this talk, Brinker said, "I know historically it is known that older managers are let go, but just keep working hard and adding value." (*Id*. at 4.) Plaintiff said it was frustrating to have

5

managed Chris Emesih, Natalie Richardson, and Breven Graham and then to see them all get promoted rather than him, to which Brinker allegedly replied that the organization was "going through a youth movement." (*Id.* at 5.) Plaintiff told Brinker, "I am only 40, and I don't want to flatline my career, and stay in the same position for 20 years." (*Id.*)

Between September of 2016 and July of 2019, eight employees were promoted to L10 positions at Defendant's facility. Seven of the employees were under age 30; the other was under the age of 35. Plaintiff had previously supervised three of these employees. Brinker was the decision-maker on all of these promotions except one. In 2016, Brinker decided to promote Rick Peterson to the L11 Traffic Manager position. In 2017, Brinker decided to promote Travis Deters to an LG1 position. Both of these positions were higher in rank than the L10 Processing Manager position for which Plaintiff subsequently applied. Both Peterson and Deters were over the age of 40 when Brinker promoted them. Brinker alone made these decisions and did not have to get prior approval from Defendant's corporate headquarters.

Plaintiff did not use Defendant's independent 24-hour hotline for reporting discrimination. Plaintiff testified that sometime after his meeting with Brinker, he complained about age discrimination at the Topeka facility to Michelle Schlie, the person at corporate headquarters to whom Brinker reported.

On January 11, 2020, Plaintiff gave notice that he was resigning his employment. Plaintiff states he believed he had no other choice because of the "youth movement" at Defendant's facility, which to him meant he would never be promoted to a Level 10 position. Plaintiff further believed his job was in jeopardy because of Brinker's comment that "historically it is known that older managers are let go." (Doc. 27 at 6.)

**II.  Summary Judgment Standards**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Sotunde v. Safeway, Inc.*, 716 F. App'x 758, 761 (10th Cir. 2017). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Id*. Any statement of fact that has not been controverted by affidavit or an exhibit is deemed to be admitted. D. Kan. Rule 7.4. Also, the court will only consider facts based on personal knowledge or supported by exhibits. Conclusory allegations are not sufficient to create a dispute as to an issue of material fact. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

**III. Analysis**

Plaintiff claims Defendant willfully violated the Age Discrimination in Employment Act (ADEA) by failing to promote him to the Process Manager position, and further that Defendant constructively discharged him from employment. (Doc. 22 at 4.) Defendant's motion for summary judgment argues that Plaintiff has failed to make a prima facie showing of age discrimination, that Defendant's reason for not selecting Plaintiff for the Processing Manager position was non-discriminatory and was not a pretext for discrimination, and that Defendant did

not constructively discharge Plaintiff. As discussed below, the court finds the latter two arguments persuasive.

**A. Pretext.** The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a)(1). Where, as here, a plaintiff relies on circumstantial evidence to show an employer's discriminatory intent, the court examines the claim under the burden-shifting framework of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). That framework first requires Plaintiff to show a prima facie case of discrimination, which can be met by evidence that Plaintiff was a member of the protected class of workers over the age of 40, that Plaintiff suffered an adverse employment action, and that the challenged action occurred under circumstances giving rise to an inference of discrimination. If Plaintiff makes that showing, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its action. The burden then shifts back to Plaintiff to show that Defendant's explanation was merely pretextual. *See Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015) (citation omitted.) Plaintiff may establish pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* at 1267 (citing *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1280 (10th Cir. 2010)).

Plaintiff cites evidence that he was just over the age of 40, that he met the qualifications for the position, that he suffered an adverse employment action by having his application for Processing Manager denied, and that the job went to a substantially younger person. That is

sufficient for a prima facie showing of age discrimination. *Cf. Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). In response, Defendant has cited evidence of a legitimate, non-discriminatory reason for its decision – namely, that Brinker considered Graham's employment history and interview performance to be superior to Plaintiff's. The burden is thus on Plaintiff to cite evidence from which a jury could reasonably conclude that Defendant's explanation for its decision is unworthy of belief. The court finds Plaintiff has failed to make such a showing. The uncontroverted facts show that Brinker was intimately familiar with the employment records of both Plaintiff and Graham. Brinker testified that be believed Plaintiff's job performance was inconsistent. It is uncontroverted that Plaintiff's PDR ratings were below average and that they failed to improve in the two-year period before he was turned down for the Processing Manager position. *Cf. Doyle v. Nordam Grp., Inc.*, 492 F. App'x 846, 851 (10th Cir. 2012) ("A negative or even average performance review is obviously a legitimate factor any employer may consider in deciding whom to promote to a senior management position, particularly where, as here, the performance problems are relatively recent.") It is also uncontroverted that Brinker was informed by Graham (and apparently others) that Plaintiff was frequently absent from work or was sometimes difficult to locate when he was needed. Even assuming Brinker had no personal knowledge of such facts and relied on the reports of others in making his decision, Plaintiff cites no evidence that Brinker did not genuinely believe the reports. The relevant inquiry is "not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City and Cty. of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004) (citations omitted.)

Brinker testified he thought Plaintiff was unprepared in his interview to talk about what he would do in the Processing Manager position and what improvements he would make. (Doc. 24-

9

2 at 10-11.[2]) Brinker also testified he had previously asked Plaintiff to take on challenges "around food safety and efficiencies in the extruding department," and that Plaintiff "simply had not driven [the projects] to completion." (Doc. 24-2 at 11.) Brinker testified that by contrast, he believed Graham had a track record of results he had driven and was prepared in the interview to talk about his plans for improvement if he were selected as Processing Manager. As indicated previously, the evidence shows that prior to Brinker's decision, Graham reported directly to Brinker, such that Brinker was intimately familiar with Graham's work history. Plaintiff cites no evidence from which a jury could reasonably infer – without engaging in speculation – that Brinker did not genuinely believe Graham's performance was better than Plaintiff's or that Brinker did not actually make his determination on that basis. As indicated previously, courts do not sit as a "super personnel department" to judge whether an employer's decision was "wise, fair or correct." *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010). For that reason, "to suggest that an employer's claim that it hired someone because of superior qualifications is pretext for discrimination rather than an honestly (even if mistakenly) held belief, a plaintiff must come forward with facts showing an overwhelming disparity in qualifications." *Id.* (citing *Jaramillo v. Colo. Judicial Dept.*, 427 F.3d 1303, 1309 (10th Cir. 2005) (internal quotation marks omitted.)) Plaintiff cites no evidence of a disparity, let alone an overwhelming one, in qualifications or job performance between himself and Graham.

Plaintiff tries to demonstrate a genuine issue of fact by pointing to Brinker's alleged comment about a "youth movement" and to statistics on Defendant's hiring of L10 managers.

---

[2] Plaintiff has submitted a declaration stating that Brinker "did not specifically ask me" about matters such as what he wanted to accomplish, what his priorities would be, or what ideas he had for improvement. In fact, the declaration asserts that during the interview "Mr. Brinker did not ask any formal interview questions." (Doc. 27-1 at 4.) It is not clear what Plaintiff means by "formal" interview questions or not being "specifically" asked about his goals and priorities. Regardless, Plaintiff has failed to cite evidence genuinely controverting Brinker's assertion that Plaintiff failed to offer specific information about those topics in the course of the interview.

Neither of these suffices to show that Defendant's explanation for its decision not to promote Plaintiff was a pretext for discrimination. According to Plaintiff, when Brinker broke the news that he did not get the job, Plaintiff complained that workers he had supervised were promoted over him, and Brinker "replied that the organization was going through a 'youth movement.'" (Doc. 27-1 at 5.) The circumstances under which the alleged comment was made, however, do not reasonably give rise to an inference of age discrimination in Brinker's decision to promote Graham over Plaintiff. Aside from the fact that the comment came after the hiring decision was complete, and in the context of Brinker apparently consoling Plaintiff over not getting the job, Plaintiff cites nothing to show that the comment was anything other than an observation of a recent trend, as opposed to a suggestion that the company had a policy of favoring younger applicants or that Brinker was suggesting he decided to promote Graham because he was younger than Plaintiff. Similarly, Plaintiff's statistics on Defendant's hiring practices are unavailing, as they are both incomplete and equivocal. Plaintiff singles out L10 promotions at Defendant's facility between September of 2016 and July of 2019, and notes that all eight positions in that particular period went to candidates under 35, and seven of eight went to candidates under 30. He cites no evidence – other than his years of experience – to show that his qualifications were superior to any of the persons selected, nor is any information cited about hiring for positions other than L10. Nor does Plaintiff account for the fact that Brinker had also hired managers who were older than Plaintiff for management positions above the L10 position. It would require unsupported speculation to infer from the information cited that Defendant discriminated based on age with respect to those hiring decisions. Moreover, the uncontroverted facts show that when Plaintiff was still under the age of 40, he applied for but was rejected for three L10 positions over a period of years. The fact that Plaintiff was turned down for multiple similar positions in his younger years, when he was not

in the category of protected older workers, does not support an inference of age discrimination. Rather, it implies that Plaintiff's work history or qualifications were not considered by Defendant as being superior to other applicants.

Plaintiff likely believed that his years of experience made him a better choice for the position than a younger applicant such as Graham, but "an employee's self-assessment of [his] performance is not enough to show pretext; only the manager's perception of the employee's performance is relevant." *Middleton-Thomas v. Piat, Inc*., 323 F. Supp. 3d 1218, 1235 (D. Kan. 2018) (citing *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1179 (10th Cir. 2006)). The uncontroverted facts show that Brinker alone made the hiring decision, and no evidence is cited to show that he did not genuinely assess Graham to be the better candidate. And as indicated previously, the relevant legal inquiry is not whether the employer's reasons were fair, but only "whether the employer honestly believed its reasons and acted in good faith upon them." *Riggs v. AirTran Airways, Inc*., 497 F.3d 1108, 1118 (10th Cir. 2007). On this record, Defendant is entitled to summary judgment on Plaintiff's claim that Defendant's failure to promote him was a violation of the ADEA.

**B. Constructive Discharge**. Plaintiff contends he was constructively discharged from his position. The uncontroverted facts show Defendant is entitled to summary judgment on this claim as well.

"[C]onstructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Bennett v. Windstream Commc'ns., Inc*., 792 F.3d 1261, 1269 (10th Cir. 2015) (quotations omitted). "To establish constructive discharge, a plaintiff must show that she had no other choice but to quit." *Id*. (quotations omitted).

Plaintiff fails to cite evidence to satisfy these standards. As indicated by *Bennett*, Plaintiff's subjective view that he had no choice but to quit is irrelevant. What is required is evidence that the conditions of employment were "objectively intolerable." *Id.* Plaintiff cites no evidence of aggravating factors that made staying on the job intolerable. Although Plaintiff was denied a promotion, he was not in any way demoted, reassigned, or otherwise made worse off, and by his own admission Brinker encouraged him to stay on with the company and keep working. As case law makes clear, the question "is not whether working conditions at the facility were difficult or unpleasant," but whether conditions were so severe that the plaintiff "simply had no choice but to quit." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004). The conditions cited by Plaintiff were not so objectively severe as to force a reasonable person to quit. Rather, Plaintiff made a voluntary choice to leave, and "a plaintiff who voluntarily resigns cannot claim that he or she was constructively discharged." *Id.*

**IV. Conclusion**

Defendant's motion for summary judgment (Doc. 23) is GRANTED. The clerk is directed to enter judgment of dismissal in favor of Defendant on Plaintiff's claims. IT IS SO ORDERED this 19th day of May, 2022.

s/John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE